UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CHILLCO, INC. | CIVIL ACTION |
| VERSUS | NO. 20-1395 |
| GGT ENERGY SOLUTIONS, INC., ET AL. | SECTION "A" (5) |

## ORDER AND REASONS

Before the Court is a **Motion to Dismiss (Rec. Doc. 9)** filed by the Defendants GGT Energy Solutions, Inc., ("GGT") and Samuel Galbraith pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(6). The Plaintiff ChillCo, Inc., opposes the motion, (Rec. Doc. 12), and the Defendants replied. (Rec. Doc. 15) The motion, set for submission on August 5, 2020, is before the Court on the briefs without oral argument.

I.  **Background**

ChillCo hired Mr. Galbraith as its Director of Automated Solutions in September 2015. (Rec. Doc. 1, ¶ 8, ChillCo's Complaint). This role required Galbraith to bid on projects for that division of ChillCo. *Id*. Subsequently, in December 2018, Galbraith started corresponding with representatives from Johnson Controls, Inc. ("JCI"), a ChillCo customer, about JCI submitting a bid that would include ChillCo's services for a federally-funded project in North Carolina called the MCAS Cherry Point Project. *Id*. at ¶ 11. Galbraith then submitted a proposal "on ChillCo's letterhead, for ChillCo's benefit, and included parts and services to be provided by one of ChillCo's distributors" to JCI to be incorporated into JCI's bid for the MCAS Cherry Point Project. *Id*. at ¶ 13-14. On March 22, 2019, Galbraith notified ChillCo that it was the lowest bidder for the project. *Id*. at ¶ 14.

A few months later in April 2019, Galbraith informed ChillCo that he wanted to perform his ChillCo duties through a company partially owned by him, GGT Energy Solutions. *Id*. at ¶ 20-21. Thus, although Galbraith would no longer be formally employed by ChillCo, he would still perform his duties as ChillCo's Director of Automated Solutions. *Id*. After the parties agreed to this new relationship, Galbraith continued traveling to North Carolina and submitting expense reports to ChillCo related to that travel. *Id*. at ¶ 25. This continued until November 19, 2019 when Galbraith informed ChillCo that the project "was descoped because of all bids exceeding the DOD budget for that scope of work." *Id*. at ¶ 26.

Subsequently, at the end of 2019, ChillCo terminated its relationship with Galbraith. *Id*. at ¶ 29. ChillCo claims that it then "learned that Mr. Galbraith, while still employed by ChillCo, had begun actively recruiting ChillCo's employees to work for GGT, rather than ChillCo, in North Carolina." *Id*. at ¶ 30. More specifically, ChillCo claims that Galbraith held himself out as a "hired gun" and "[e]vidence also suggested that Mr. Galbraith was still preparing to complete work on the federally-funded North Carolina project." *Id*. at ¶ 30-31. Further, "Mr. Galbraith had registered GGT as a federal contractor, a requirement to work on the North Carolina project or any other project that is federally funded." *Id*. at ¶ 32. Thus, "[t]hroughout most of 2019, while his employment relationship with ChillCo continued on paper and he continued to incur expenses purportedly on behalf of ChillCo, Mr. Galbraith was working to divert business from ChillCo to GGT." *Id*. at ¶ 33.

Accordingly, ChillCo filed a Complaint against GGT and Galbraith which made the following four claims: (1) unfair trade practices under the Louisiana Unfair Trade Practices Act ("LUTPA"), (2) breach of fiduciary duty, (3) breach of contract, and (4) treble damages

under the LUTPA. The Defendants responded by filing a motion to dismiss pursuant to FRCP 12(b)(6). (Rec. Doc. 9). The Court will now address the merits of the Defendants' motion.

## II.     Legal Standard of 12(b)(6) Motion to Dismiss

FRCP 12(b)(6) permits a court to dismiss a complaint when a plaintiff has failed to state a claim for which relief can be granted. *See* Fed.R.Civ.P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal v. Ashcroft*, 556 U.S. 662, 677 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual matter contained in the complaint must allege actual facts, not mere legal conclusions portrayed as facts. *Id*. at 667 Additionally, the factual allegations of a complaint must state a plausible claim for relief. *Id*. A complaint states a "plausible claim for relief" when the factual allegations contained therein, taken as true, necessarily demonstrate actual misconduct on the part of the defendant, not a "mere possibility of misconduct." *Id*.; *see also Jacquez v. Procunier*, 801 F.2d 789, 791-92 (5th Cir.1986). Lastly, the Court "will not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts[.]" *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III.    Discussion

### A.  Unfair Trade Practices

The LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. Rev. Stat. § 51:1405(A). It affords a private right of action to "[a]ny person who suffers any ascertainable loss" as a result of the unlawful conduct. § 51:1409(A). To recover, the plaintiff must "prove some element of fraud, misrepresentation, deception or other unethical conduct." *Tubos de Acero de Mexico, S.A. v.*

*Am. Int'l Inv. Corp.*, 292 F.3d 471, 480 (5th Cir. 2002) (quoting *Omnitech Intern., Inc. v. Clorox Co.*, 11 F.3d 1316, 1332 (5th Cir. 1994)).

"What constitutes an unfair trade practice is determined by the courts on a case-by-case basis." *Id*. However, a court should find a practice "unfair under the statute only when" the practice "offends established public policy and is immoral, unethical, oppressive or unscrupulous." *Id*. (quoting *Computer Mgmt. Assistance Co. v. Robert F. DeCastro, Inc.*, 220 F.3d 396, 404 (5th Cir. 2000)); *see also Monroe v. McDaniel*, 207 So.3d 1172, 1180 (La. App. 5th Cir. 2016) ("[T]he range of prohibited practices under LUTPA is extremely narrow and includes 'only egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct.'" (quoting *Cheramie Servs., Inc. v. Shell Deepwater Prod., Inc.*, 35 So.3d 1053, 1060 (La. 2010))). Lastly, the "defendant's motivation" is a critical factor—his "actions must have been taken with the specific purpose of harming the competition." *Monroe*, 207 So.3d at 1180.

Here, the Defendants claim that ChillCo suffered no "ascertainable loss" because the MCAS Cherry Point Project was never awarded to anyone. (Rec. Doc. 9-1, p. 10-11, Defendants' Memorandum in Support). More specifically, the Defendants state that, "[w]hat is glaringly absent is any allegation that either GGT or Mr. Galbraith actually bid for the same work ChillCo bid for at MCAS Cherry Point or that either GGT or Mr. Galbraith was actually awarded any work, much less the work ChillCo bid on, at MCAS Cherry Point." *Id*. at 11.

However, in its Complaint, ChillCo states that, "[the] Defendants improperly diverted **at least one** lucrative business opportunity to themselves while engaged and funded by ChillCo." (Rec. Doc. 1, ¶ 36, ChillCo's Complaint) (emphasis added). Thus, ChillCo's claims against the Defendants are not specifically limited to only the MCAS Cherry Point Project.

Further, Louisiana courts have held that, "[t]he solicitation and diversion of an employer's customers prior to termination constitutes unfair competition entitling the plaintiff to recover damages." *Dufau v. Creole Eng'g, Inc.*, 465 So. 2d 752, 758 (La. App. 5th Cir. 1985); *see Huey T. Littleton Claims Serv., Inc. v. McGuffee*, 497 So. 2d 790, 794 (La. App. 3rd Cir. 1986); *ODECO Oil & Gas Co. v. Nunez*, 532 So. 2d 453, 464 (La. App. 1st Cir. 1988). Thus, the Court finds that diverting an employer's business opportunities before termination constitutes unfair competition. Accordingly, the Court concludes that ChillCo's pleadings plausibly illustrate an ascertainable loss, and its allegations rise to a sufficient level of "fraud, misrepresentation, deception or other unethical conduct" as required by the LUTPA.

### B. Breach of Fiduciary Duty

Louisiana courts and statutes recognize a fiduciary duty and a duty of loyalty in the context of various relationships. More specifically, Louisiana courts enforce these duties in the context of employers and employees, as "[e]mployees . . . owe a duty of fidelity to their employers" and "[a]n employee is duty bound not to act in antagonism or opposition to the interest of the employer." *Harrison v. CD Consulting, Inc.*, 934 So. 2d 166, 170 (La. App. 1st Cir. 2006) (citing *ODECO Oil & Gas Co. v. Nunez*, 532 So.2d 453, 462 (La. App. 1st Cir. 1988)). Moreover, "historically, an employee's breach of his fiduciary duty to his employer has been contemplated in instances when an employee has engaged in dishonest behavior or unfair trade practices for the purpose of his own financial or commercial benefit." *Id*. Louisiana law also recognizes a covenant of good faith and fair dealing to be implicit in every contract, *see* La. Civil Code art. 1983, which can be breached by "a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister

motive." *Industrias Magromer Cueros y Pieles S.A. v. Louisiana Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (quoting *Bond v. Broadway*, 607 So. 2d 865, 867 (La. App. 2nd Cir. 1992)).

Here, ChillCo alleges that Galbraith diverted business away from ChillCo to his partially owned company, GGT. Accepting this allegation as true, the Court finds that ChillCo has sufficiently pled a claim of breach of fiduciary duty and breach of duty of loyalty. Thus, the Court denies the Defendants' motion to dismiss as to this claim.

### C. Breach of Contract

In Louisiana, a breach-of-contract claim has three "essential" elements: "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee." *IberiaBank v. Broussard*, 907 F.3d 826, 835 (5th Cir. 2018) (citing *Favrot v. Favrot*, 68 So.3d 1099, 1108-09 (La. App. 4th Cir. 2011)).

In its Complaint, ChillCo presented its breach of contract claim by saying: (1) "Mr. Galbraith [entered] into an employment-related contract with ChillCo in 2015 and then again in 2018," (2) "[this] agreement prevented Mr. Galbraith from recruiting employees of ChillCo to end their employment with ChillCo," (3) "Mr. Galbraith breached his contractual obligations by [ ] soliciting ChillCo employees to end their employment with ChillCo," and (4) "[t]hese breaches [then] caused damages to ChillCo in an amount [to] be determined at trial." (Rec. Doc. 1, ¶ 45-48, ChillCo's Complaint). However, the Defendants contend that ChillCo's claim does not satisfy the third breach of contract element because ChillCo failed to present any damages. (Rec. Doc. 15, p .9, Defendants' Reply Memorandum). As the Defendants

explained, "ChillCo notably fails to argue or even suggest that any ChillCo employee has left his or her employment with ChillCo as a result of Mr. Galbraith's alleged solicitations." *Id*.

Here, the Court finds that ChillCo has sufficiently pled its breach of contract claim. More specifically, the Court finds it plausible that the Defendants caused damages to ChillCo by soliciting ChillCo's employees to end their employment with ChillCo. Thus, the Court denies the Defendants' motion to dismiss ChillCo's breach of contract claim.

### D. Treble Damages under the LUTPA

The LUTPA statute states that "[i]f the court finds the unfair or deceptive method, act, or practice was knowingly used, **after being put on notice by the attorney general**, the court shall award the person bringing such action three times the actual damages sustained." La. R.S. 51:1409 (emphasis added). Courts have squarely held that a plaintiff must affirmatively plead that a defendant's conduct has persisted after notice from the attorney general of a LUTPA violation in order to adequately plead a claim for treble damages. *See, e.g., Thomas Indus. & Mech. Contractors, LLC v. Justice*, No. CV 20-1102, 2020 WL 3429892, at *4 (E.D. La. June 23, 2020) ("Thus, notice from the attorney general is an essential element of the claim for treble damages and must be alleged in the complaint. And because plaintiff has not pleaded that the attorney general put defendants on notice of a LUTPA violation, plaintiff's claim for treble damages must be dismissed."); *Andretti v. Sports Mktg. La. LLC v. NOLA Motorsports Host Comm., Inc.*, 147 F. Supp. 3d 537, 571 (E.D. La. 2015) (finding that a plaintiff failed to state a claim for treble damages when plaintiff did "not allege anywhere in its complaint or in any amended complaint that the attorney general has put the defendants on notice of a LUTPA violation, as required by the statute in order to be entitled to treble damages.").

Louisiana courts have reasoned that notice from the attorney general serves as a "cease and desist" notice, after which continued LUTPA violations trigger treble damages. *See Rincon v. Owens Collision & Repair Serv. Ctr.*, No. 2019-0383, 2018 WL 4520384, at *6 (La. App. 1st Cir. 2018). Thus, notice from the attorney general is an essential element of a claim for treble damages under the LUTPA and must be alleged in the complaint.

Here, ChillCo does not allege that the Defendants' LUTPA violations were committed after receiving notice from the attorney general. (Rec. Doc. 1, ¶ 39, ChillCo's Complaint). Rather, ChillCo's Complaint states that, "if the Defendants continue their unfair trade practices after receiving notice from the Attorney General's Office about the potential for treble damages and the nature of ChillCo's claims, ChillCo will be entitled to treble damages under La. Rev. Stat. § 51:1409." *Id*. Thus, because ChillCo's claim for treble damages only relates to conduct that occurred before this suit was filed, the Defendants' alleged violations are not ongoing and do not satisfy the requirements for treble damages under La. Rev. Stat. § 51:1409. Accordingly, the Court dismisses ChillCo's claim for treble damages under the LUTPA.

### E. ChillCo's Leave to Amend Its Complaint

Lastly, ChillCo requests that: "if the Court finds [the] Defendants' arguments persuasive and is inclined to dismiss any of ChillCo's claims, ChillCo requests leave to amend the complaint." (Rec. Doc. 12, p. 10, ChillCo's Opposition). The Court can grant a plaintiff's leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). District courts have discretion to grant leave to amend, and the federal rules favor granting leave over denying it. *See Jamieson By & Through Jamieson v. Shaw*, 772 F.2d 1205, 1208 (5th Cir. 1985). Justifications for denying leave to amend include "undue delay, bad faith, dilatory motive,

repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and the futility of the amendment." *Id*. Allowing a plaintiff to amend a complaint is "futile" when "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000).

Here, allowing ChillCo to amend its Complaint to alter its treble damages claim under the LUTPA would be futile. As noted above, the facts of this case do not present a claim for treble damages under La. Rev. Stat. § 51:1409.

Accordingly;

**IT IS ORDERED** that the **Motion to Dismiss (Rec. Doc. 9)** filed by the Defendants GGT Energy Solutions, Inc., and Samuel Galbraith pursuant to FRCP 12(b)(6) is **GRANTED IN PART AND DENIED IN PART**. The motion is granted in regard to ChillCo's claim for treble damages under the LUTPA, and this claim is dismissed. However, the Defendants' motion is denied in regard to ChillCo's claims for unfair trade practices under the LUTPA, breach of fiduciary duty, and breach of contract. Lastly, the Court denies ChillCo's leave to amend its Complaint.

August 31, 2020

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE